# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| RICHARD COLE, BRADFORD COLE, CARY JUSTICE, MICHAEL MASSEY, and DON WEGENER, | ) ) ) | |
| | ) | **Case No: 3:17-cv-0013** |
| Plaintiffs, on behalf of themselves and all others similarly situated, | ) ) | |
| | ) | |
| v. | ) | **Judge Waverly D. Crenshaw** |
| | ) | **Magistrate Judge Jeffery S. Frensley** |
| AMERICAN SPECIALTY HEALTH NETWORK, INC.; AMERICAN SPECIALTY HEALTH, INC.; CIGNA CORPORATION, INC.,; JOHN DOES A, B, & C; and JANE DOES A, B, & C, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>CIGNA CORPORATION'S MOTION TO DISMISS</u>

---

T. Harold Pinkley, BPR 09830
Amanda Haynes Young, BPR 015472
Valerie Diden Moore, BPR 031593
BUTLER SNOW LLP
150 Third Avenue South, Suite 1600
Nashville, TN 37201
harold.pinkley@butlersnow.com
mandy.young@butlersnow.com
valerie.moore@butlersnow.com
Telephone: (615) 651-6700
Facsimile: (615) 651-6701

Joshua B. Simon
Warren Haskel
   (both admitted *pro hac vice*)
Dmitriy Tishyevich
   (*pro hac vice* application pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
joshua.simon@kirkland.com
warren.haskel@kirkland.com
dmitriy.tishyevich@kirkland.com
Telephone: (212) 446-4800
Facsimile: (212) 446-6460

*Counsel for Defendant Cigna Corporation*

## INTRODUCTION

Plaintiffs are chiropractors who chose to accept the benefits of being in Cigna's network but now, for a second time, seek millions of dollars in damages based on the theory that the network contracts they signed were unenforceable contracts of adhesion.[1] The first time this case was filed, Judge Campbell dismissed eight of the nine claims that Plaintiffs asserted against Cigna based on Cigna's motion to dismiss, and Plaintiffs chose to voluntarily dismiss their remaining claim for "contract of adhesion." *See Cole v. Am. Specialty Health Network, Inc.*, No. 3:14-cv-2022, 2015 WL 1734926 (M.D. Tenn. Apr. 16, 2015) ("*Cole I*"). Plaintiffs now have refiled that claim, but it should be dismissed for four independent reasons, none of which were addressed by Judge Campbell in the prior litigation.

*First*, although the parties did not brief this issue before Judge Campbell, there is no such thing as a "contract of adhesion" claim under Tennessee law. Rather, courts in Tennessee and across the country have held that contract of adhesion is an ***affirmative defense*** that can be pleaded when a party is seeking to avoid enforcement of a contract—not an independent cause of action in a case like this one seeking damages and other affirmative relief. *See, e.g.*, *Wallace v. Nat'l Commercial Bancorp.*, 1993 WL 44600, at *3 (Tenn. App. Feb. 23, 1993).

*Second*, while the crux of Plaintiffs' complaint is that Cigna somehow did something wrong by asking Plaintiffs to contract with ASH if they wanted to remain in Cigna's network, they point to no contractual or legal obligation that Cigna breached. Nor could they, because Cigna's original contracts with Plaintiffs—which Plaintiffs do not allege were contracts of

---

[1] Following the Complaint's terminology, "Cigna" refers to Cigna Corporation—a holding company that is not engaged in the business of insuring or providing administrative services to healthcare benefits plans, and has been misnamed as a party. This motion does not address this fact, because the Complaint should be dismissed regardless of which Cigna entity it names. "ASH" refers to Defendants American Specialty Health Networks, Inc. and American Specialty Health, Inc., collectively. With respect to quotations in this memorandum of law, unless otherwise noted, all emphasis has been added and all internal citations have been omitted.

adhesion—could be unilaterally amended by Cigna and terminated without cause. Thus, Plaintiffs had no right to be in Cigna's network under the terms of their original contracts forever, and Cigna had every right to ask Plaintiffs to contract with ASH if they wanted to remain in Cigna's network. In fact, these contracts expressly allowed Cigna to take the very actions about which Plaintiffs now complain, including the suspension of Plaintiffs' contracts if they contracted with ASH.

*Third*, even if a contract of adhesion claim existed under Tennessee law, Plaintiffs have not and cannot plead it. To prove that a contract of adhesion existed Plaintiffs must show that they had no realistic alternative other than to agree to ASH's terms. But their own allegations affirmatively disprove that this could be the case, as Plaintiffs admit that "some of the individual Plaintiffs, and others similarly situated, have opted out of the ASH/Cigna network," choosing instead to treat Cigna patients as out-of-network providers. (Compl. ¶ 109.) Having made their choice to stay in Cigna's network even though they admit they could opt out, Plaintiffs cannot reasonably complain that they are entitled to damages because their contract with ASH was an unenforceable contract of adhesion.

*Fourth*, adhesion contracts are still enforceable unless they are also unconscionable; but Plaintiffs here offer no facts to suggest that the contracts they signed were in fact unconscionable. For all these reasons, Plaintiffs' Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### The Parties' Relationship

Cigna is a healthcare company that administers healthcare benefits plans for its clients, many of whom are employers who provide health benefits to their employees through self-funded plans. (*See* Compl. ¶ 18.) In administering plans, Cigna contracts with individual healthcare providers to treat plan members, whereby providers become "in-network" providers

3

who charge members based on a pre-determined fee schedule. (*Id.* ¶¶ 21, 26-27.) Plaintiffs were such in-network providers with Cigna. (*Id.* ¶¶ 24, 25, 144-146, 150-51, 155-56, 160-61.) In contrast, "out-of-network" providers do not have a contractual relationship with Cigna—and thus do not have agreed-upon rates with Cigna—but they can still be paid for treating patients covered by Cigna-administered plans. (*Id.* ¶ 22.) Cigna also contracts with entities that provide healthcare services, including entities that give Cigna access to their own networks of contracted healthcare professionals, administer payments to contracted healthcare professionals for claims submitted to Cigna, and evaluate claims for medical necessity and/or appropriateness. (*Id.* ¶¶ 28-31.) Cigna contracted with ASH, a well-known chiropractic network and management company, to perform all of these functions for chiropractors in Tennessee. (*Id.*)

To effect its arrangement with ASH, Cigna gave its in-network chiropractors an option: they could continue to treat Cigna members on an in-network basis by agreeing to suspend their agreements with Cigna in favor of separate agreements with ASH, or they could treat Cigna's members as out-of-network providers. (*Id.* ¶¶ 35-36.) Plaintiffs chose to continue treating Cigna members on an in-network basis by signing separate contracts with ASH, but they now contend that those contracts are unenforceable contracts of adhesion. But as set forth below, Plaintiffs' own allegations make clear that they made a voluntary choice to contract with ASH after full disclosure of all material facts.

***The Terms of the "Election to Participate with Cigna" Agreement and the ASH "Provider Services Agreement" Fully Disclosed this New Relationship to Plaintiffs***

Plaintiffs admit that, starting in 2010, Cigna and ASH sent letters to in-network providers—including Plaintiffs—that explained the new relationship between ASH and Cigna, before Plaintiffs ever agreed to any new contracts with Cigna or ASH. (*Id.* ¶ 32.) These letters informed Plaintiffs that: (1) "Cigna had contracted with ASH to manage and administer in-

4

network chiropractic benefits for Cigna benefit plans"; (2) "in order to remain as an in-network provider with Cigna, Plaintiffs and those similarly situated would be required to contract with ASH and enroll with ASH by a certain deadline"; and (3) upon agreement with Cigna and ASH, any direct network provider agreements with Cigna would be "suspended" as long as Cigna's contract with ASH was in effect. (*Id.* ¶¶ 32-35.) Plaintiffs' allegations also make clear that, after receiving letters from Cigna and ASH, Plaintiffs signed an agreement with Cigna called the "Election to Participate with Cigna" ("ETP") and a "Provider Services Agreement" ("PSA") with ASH.[2] (*Id.* ¶¶ 38, 43-45; *see also* Pinkley Decl. Ex. A (ETP Agreement); Pinkley Decl. Ex. B.1-B.5 (Plaintiffs' ETP Signature Pages); *id.* at Ex. C (PSA Agreement); *id.* at Ex. D.1-D.5 (Plaintiffs' PSA Signature Pages).) These agreements further demonstrate that Cigna and ASH fully disclosed the new contractual arrangements. For instance, the ETP memorialized what Cigna communicated in its letters, including that:

- Plaintiffs' contracts with Cigna would be suspended if they chose to contract with ASH (Compl. ¶ 38(e) ("[T]he undersigned health care provider's rights and obligations under any Direct Agreement with respect to Participants under said Programs shall be suspended from the date on which he or she is or becomes a party to such arrangement with [ASH] . . .""));

- Plaintiffs had the option to enter into an agreement with ASH (*id.* ¶ 38(a-b) ("You will provide to Participants Covered Services that are within the scope of your health care practice, and pursuant to the applicable terms and conditions of the [ASH] Agreement and this Election."));

- Plaintiffs "will accept as full payment due from CIGNA or other Payor for rendering such Covered Services the amounts specified and payable by [ASH]" (*id.* ¶ 38(c)); and

---

[2] Attached as Exhibits A to D to the Declaration of T. Harold Pinkley are copies of Plaintiffs' ETP with Cigna, Plaintiffs' PSA with ASH, and Plaintiffs' accompanying signature pages for Cigna's ETP and ASH's PSA, which Plaintiffs suggest they would have attached to the complaint but for confidentiality concerns. (Compl. ¶ 45 & n.1.) Because these contracts are "referred to in the complaint and [are] central to the plaintiff's claim," this Court may consider them when deciding this motion under Rule 12(b)(6). *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) ("Where the plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.").

5

- "[T]he terms relating to reimbursement, shall be governed instead by Your arrangement with [ASH]." (*Id.* ¶ 38(e).)

The plain language of the ETP thus shows that Cigna did not misrepresent to Plaintiffs that their contracts with Cigna would continue, that their fee schedules would remain in place, or that the three-page ETP was the entire agreement with Cigna. (*See id.* ¶¶ 44-46, 196.)

Plaintiffs' agreement with ASH further explained how their relationship with Cigna and ASH would work going forward. (*See id.* ¶¶ 48-51.) Plaintiffs do not cite any specific terms of the PSA that they believe ASH breached, nor do they cite a single claim they believe Cigna or ASH paid or otherwise mishandled. And indeed, much of the conduct that Plaintiffs complain about was explicitly ***permitted*** by the PSA that Plaintiffs signed. For instance,

- Plaintiffs allege that the explanation of benefits ("EOBs") forms Cigna sent to patients and the amount due to Plaintiffs from ASH were different, causing unspecified "errors in billing." (*Id.* ¶¶ 59-60, 63.) But the PSA makes clear that these amounts are not supposed to be the same. The "Claims Payment Amount" is the amount Plaintiffs agreed to receive from ASH, subject to various adjustments and deductions—and that amount is different from the amount that Cigna pays ASH, which is Cigna's claim reimbursement and thus what appears on patients' EOBs. (*See* Pinkley Decl. Ex. C, § 1.07.)

- While Plaintiffs allege that claims were not processed correctly, the PSA imposes a duty on Plaintiffs to "follow-up" with ASH within specified time frames about such disputes, after which Plaintiffs could appeal any remaining non-payments. (*Id.* at Ex. C, Att. G, § 5-6.) Plaintiffs do not allege that they engaged in this process, as they were contractually required, or that ASH failed to honor the process if they did.

- Plaintiffs complain of "penalties" for submitting paper claims, but the PSA in fact provides an incentive for submitting claims electronically. (*See id.* at Ex. C, Att. J., § 1 ("Contracted Chiropractor shall receive an ETP Program Incentive Payment from or be charged an Administrative Processing Fee by ASH Networks based on the percentage of successful transactions submitted through the ETP Program.").)

- Plaintiffs allege that the "Tier system" violates the contract but that process is plainly set forth in the PSA, and Plaintiffs offer no facts suggesting that Cigna or ASH failed to comply with these terms. (*See id.* at Ex. C, Att. K ("ASH Networks has defined a tier system to describe various levels of waiver.").)

6

***The PSA Could Be Terminated by Providers at Any Time Without Cause or Cost***

Finally, while Plaintiffs assert that they were "forced" into the PSA (*e.g.*, *id*. ¶¶ 134, 144, 190-91), the PSA's terms again tell a different story. The PSA states that Plaintiffs could terminate it "at any time with or without cause," subject to a 60-day notice requirement. (Pinkley Decl. Ex. C, PSA Art. 5.01.) There was no monetary penalty for doing so. (*Id*.) Moreover, had they chosen to terminate the PSA, Plaintiffs could have still provided services to members of Cigna-administered plans—just on an out-of-network basis. Indeed, Plaintiffs admit that at least some in-network providers did just that, including some Plaintiffs after a period of contracting with ASH. (Compl. ¶ 109.) Plaintiffs' claims of compulsion thus elide the real reason they agreed to the PSA and worked with ASH: they wanted the benefits of being a Cigna in-network provider, but without any of the accompanying administrative duties. (*Id*. ¶ 21.)

***The Original Motion to Dismiss, Decision, and Voluntary Dismissal***

In *Cole I*, these same Plaintiffs brought nine claims—fraud, breach of contract, conversion, negligence, accounting, and more—against Cigna and ASH arising from essentially the same factual allegations. (*See generally Cole I*, Dkt. 1.) The court granted Cigna's motion to dismiss with respect to eight of the nine claims, dismissing all claims other than adhesion. *Cole*, 2015 WL 1734926, at *7. On November 20, 2015, Plaintiffs filed a notice of voluntary dismissal, which the court entered on January 6, 2016. (*Cole I*, Dkts. 63, 70.) On January 6, 2017—exactly one year later—Plaintiffs filed this action, repeating the same factual allegations, but bringing only a contract of adhesion claim. (Dkt. 1.)

## ARGUMENT

To survive a Rule 12(b)(6) motion, a Complaint must "plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

In undertaking this analysis, a court may consider not only the complaint's allegations, but also "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.,* 413 F.3d 553, 560 (6th Cir. 2005). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And "a legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz*, 592 F.3d at 722.

## I.       The Contract of Adhesion Claim Fails as a Matter of Law.

Plaintiffs' sole claim is for a contract of adhesion. (Compl. ¶¶ 189-98.) This claim should be dismissed with prejudice: under Tennessee law, adhesion is not a cause of action but an ***affirmative defense*** to contract enforcement. Moreover, however raised, adhesion cannot support recovery of money damages that Plaintiffs seek here.

### A.       Tennessee Does Not Recognize a Claim for Contract of Adhesion.

Under Tennessee law, the concept of a contract of adhesion is closely linked to unconscionability, and these two concepts are analyzed together in determining whether a contract is enforceable—because "[e]ven if a contract is found to be adhesive, it is enforceable unless it is unduly oppressive or unconscionable." *Wallace v. Nat'l Bank of Comm.*, 938 S.W.2d 684, 688 (Tenn. 1996). That is, adhesive contracts are not *per se* unenforceable in Tennessee: instead, if the contract is deemed adhesive, it may be unenforceable to the extent that it is ***also*** unconscionable. *See Cooper v. MRM Inv. Co.*, 367 F.3d 493, 503 (6th Cir. 2004) ("Even if the [] arbitration agreement were adhesive, the agreement was enforceable under Tennessee law unless [plaintiff] showed it was also unconscionable").

Problematically for Plaintiffs, however, Tennessee law recognizes that unconscionability (and thus adhesion) are ***affirmative defenses*** to the enforcement of a contract—but they are not

8

claims that can stand alone. Thus in *Wallace v. Nat'l Commercial Bancorporation*, the Court of Appeals affirmed the trial court's dismissal of an affirmative claim for unconscionability, "agree[ing] with the trial court that this is a ***defense*** to enforcement of a contract," and "agree[ing] with the decisions in *Sanders v. Colonial Bank of Alabama*, 551 So. 2d 1045 (Ala. 1989) and *Cowen Equipment Co. v. Gen. Motors Corp.*, 734 F.2d 1581 (11th Cir. 1984), which hold that the doctrine of unconscionability is ***not available to obtain affirmative relief***, but is available only as a defense." 1993 WL 44600, at *3 (Tenn. App. Feb. 23, 1993).[3] Other Tennessee decisions have likewise recognized that adhesion and unconscionability are affirmative defenses. *See, e.g.*, *Vintage Health Resources, Inc. v. Guiangan*, 309 S.W.3d 448, 460 (Tenn. App. 2009) ("[u]nconscionability" is "an affirmative defense"); *Berent v. CMH Homes, Inc.*, 466 S.W.3d 740, 746 (Tenn. 2015) (listing "unconscionability" as one of "general state-law contract defenses," together with fraud and duress). Plaintiffs' attempt to plead this affirmative defense as a claim thus fails as a matter of law and should be dismissed on the pleadings. *See Willingham v. NovaStar Mortg., Inc.*, 2006 WL 6676801, at *33 (W.D. Tenn. Feb. 7, 2006) (citing *Wallace*, agreeing with defendants that "the doctrine of unconscionability may only be used as a defense," and dismissing "Plaintiff's claim for unconscionability").[4]

This Court should not recognize a cause of action that Tennessee courts have not, because as the Sixth Circuit has cautioned repeatedly, the job of federal courts sitting in diversity is to apply state law as it exists—not expand it. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578

---

[3] In a subsequent appeal in *Wallace*, the Supreme Court noted the argument that "unconscionable and oppressive provisions of a contract cannot constitute the basis for a cause of action," but disposed of the case on other grounds without deciding this issue. *Wallace*, 938 S.W.2d at 686.

[4] *Cf. Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 486 (W.D. Tenn. 2009) (expressing doubt, without deciding, "whether unconscionability, which is a defense to the enforcement of a contract, can even be pleaded as a separate cause of action.") (citing *Wallace*, 938 S.W.2d at 686). Although there are several district court decisions that appear to assume that adhesion is a cause of action in Tennessee, those decisions—and Judge Campbell's prior decision in *Cole I*—did not actually address the question of whether Tennessee law in fact recognizes such a free-standing claim. *See, e.g.*, *Gebhardt v. GMAC Mortg., LLC*, 2010 WL 2901823, at *2 (E.D. Tenn. July 21, 2010); *Ivey v. Wells Fargo Home Mortg.*, 2015 WL 12826638, at *2-3 (W.D. Tenn. Sept. 28, 2015).

(6th Cir. 2004) ("Federal courts hearing diversity matters should be extremely cautious about adopting substantive innovation in state law.").  Here, applying settled Tennessee law is simple indeed because the Court of Appeals has already concluded that Tennessee does ***not*** recognize a claim for unconscionability.  Absent persuasive evidence that Tennessee Supreme Court would now hold otherwise—of which there is none—this Court should follow suit.

The conclusion that Tennessee does not recognize an affirmative claim for a contract of adhesion is further reinforced by the fact that many other states have addressed this precise issue and held that while adhesion and unconscionability may provide a way to avoid enforcement of a contract, a plaintiff ***cannot*** use these defenses to seek affirmative relief.  *See, e.g.*, *Rubio v. Capital One Bank*, 613 F.3d 1195, 1205-06 (9th Cir. 2010) ("unconscionability is an affirmative defense, not a cause of action."); *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 2007 S.D. 34, ¶¶ 28, 30 (S.D. 2007) (noting that "an adhesion claim does not give rise to an independent cause of action for damages," and affirming dismissal); *O'Connor v. Nat'l Default Servicing Corp.*, 2014 WL 558712, at *4 (D. Nev. Feb. 10, 2014) (dismissing a claim for "unconscionable adhesion of contract" because it was "not a viable cause of action in Nevada."); *Buza v. Yahoo!, Inc.*, 2011 WL 5041174, at *3 (N.D. Cal. Oct. 24, 2011) (denying as futile leave to amend to allege a "contract of adhesion claim" because, among other things, that is "not an affirmative claim."); *Barnes v. Univ. Fed. Credit Union & Gov't Employees Ins. Co./GEICO Ins.*, 2010 WL 2133946, at *7 (Tex. App. May 27, 2010) (affirming grant of summary judgment against an "unconscionable contract of adhesion" claim because it was not an "independent cause[] of action under Texas law."); *Alboyacian v. BP Prods. N. Am., Inc.*, 2011 WL 5873039, at *5 (D.N.J. Nov. 22, 2011) (dismissing a claim that franchise agreements were "unconscionable contracts of adhesion" because it was not "a cause of action that a plaintiff may bring in the

10

affirmative").[5]  Indeed, this rule is so well-settled that courts do not hesitate to dismiss adhesion and unconscionability claims on the pleadings.  *See, e.g.*, *Rubio*, 613 F.3d at 1205-06 (affirming dismissal); *Solomon*, 791 F. Supp. 2d at 191; *Alboyacian*, 2011 WL 5873039, at *5; *Camp v. Alabama Telco Credit Union*, 2013 WL 2106727, at *5 (N.D. Ala. May 13, 2013) (dismissing unconscionability claim because it "is an affirmative defense and not available for use in obtaining affirmative relief.").[6]

There is zero reason to think that Tennessee would buck this overwhelming trend.  To the contrary, the Court of Appeals had already aligned itself with this majority view decades ago, relying on two out-of-state cases to support its holding that "unconscionability is not available to obtain affirmative relief[.]"  *Wallace*, 1993 WL 44600, at *3 (citing the Supreme Court of Alabama decision in *Sanders* and the Eleventh Circuit decision in *Cowen Equipment Co.*).

## B.    At Bare Minimum, an Adhesion Claim Cannot Support Monetary Damages.

The defense of adhesion cannot be used to seek ***any*** affirmative relief, for reasons set forth above.  But even assuming *arguendo* Tennessee did recognize a free-standing claim for

---

[5]  *See also Solomon v. Falcone*, 791 F. Supp. 2d 184, 191 (D.D.C. 2011) (dismissing claim for unconscionability because "unconscionability applies only defensively to preclude the enforcement of a contract, not as a sword that a party may use to rescind an unfavorable contract."); *Ng. v. HSBC Mortg. Corp.*, 2011 WL 3511296, at *8 (E.D.N.Y. Aug. 10, 2011) ("A cause of action for unconscionability may not be used to seek affirmative relief"); *Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Sup. 555, 566 n.14 (N.J. Sup. 2002) ("the [unconscionability] doctrine acts as a shield against enforcement of an unreasonable contract and not as a sword on a claim for affirmative relief."); *Galvin v. First Nat'l Monetary Corp.*, 624 F. Supp. 154, 158 (E.D.N.Y. 1985) (agreeing that "the doctrine of unconscionability is in the nature of an affirmative defense, and does not give rise to a cause of action."); *Frye v. Am. Gen. Finance, Inc.*, 307 F. Supp. 2d 836, 844 (S.D. Miss. 2004) ("The doctrine of unconscionability is a defense to the enforcement of a contract, not a private cause of action that can be brought by a party seeking damages."); *Carey v. Lincoln Loan Co.*, 203 Or. App. 399, 423 (Or. App. 2005) ("unconscionability is not a basis for a separate claim for relief."); *James v. Terex USA, LLC*, 2016 WL 7217738, at *2 (S.D. Ga. Dec. 12, 2016) (denying as futile leave to amend to add a claim for "damages as a result of the unconscionable contract," because "[t]he doctrine of unconscionability is not a separate claim").

[6]  *See also, e.g.*, *Nygaard*, 2007 S.D. 34, ¶ 30 (affirming dismissal of "affirmative adhesion contract claims"); *Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 512-13 (E.D.N.Y. 2014) (dismissing several "defenses that plaintiffs attempt to convert into affirmative claims for relief," including "unconscionability"); *Gaitan v. Mortg. Electronic Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) (dismissing an "unconscionability" claim because "[n]o such affirmative claim exists.").

adhesion, at a minimum, adhesion certainly cannot support the monetary recovery that Plaintiffs are seeking in this lawsuit.

The Supreme Court of South Dakota addressed this same issue in *Nygaard*, 2007 S.D. 34. There, uninsured patients signed contracts with hospitals and alleged that hospitals then charged them "more than an implied, commercially reasonable rate." *Id.* ¶¶ 1, 3, 10-12, 24. Like Plaintiffs here, plaintiffs in *Nygaard* "sought two types of relief" for their adhesion claim, alleging "economic injury and damages" and also that the contracts were "unenforceable." *Id.* ¶ 27; *compare* Compl. ¶¶ 149, 154, 159, 164, 169 (Plaintiffs alleging monetary damages); *id.* ¶ 196 (alleging the contracts are unenforceable).

In addition to finding that an adhesion claim could not stand as an independent cause of action, *Nygaard* squarely rejected the idea that an adhesion claim (however brought) could ever support monetary damages, because even assuming the contracts were adhesive, plaintiffs "have no right to recover damages simply because they *entered into* an unconscionable contract." 2007 S.D. 34 ¶ 29 (emphasis in original). *Nygaard* then quoted *Cowin Equipment*—the same case on which the Court of Appeals relied in *Wallace* to hold that Tennessee does not recognize an adhesion claim—to explain that "the equitable theory of unconscionability has ***never*** been utilized to allow for the affirmative recovery of money damages," and that this doctrine does not "empower[] a court . . . to do more than refuse *enforcement* of the unconscionable section or sections of the contract so as to avoid an unconscionable result." *Id.* (alteration in original, second emphasis in original); *id.* ¶¶ 29-30 (collecting cases that "have consistently rejected the theory that damages may be collected for an unconscionable contract provision."). *Nygaard* thus dismissed the adhesion claim to the extent plaintiffs sought "to recover damages." *Id.* ¶ 30.

12

Other states have similarly dismissed unconscionability claims that sought damages, concluding that "unconscionability *only* applies as a *defense* to contract *enforcement*, rather than as an alternative theory for a breach of contract claim." *James*, 2016 WL 7217738, at *2 (emphases in original). And Tennessee is squarely in accord: as the Tennessee Supreme Court has recognized, the defense of unconscionability only allows courts to refuse to enforce the unconscionable contract or a particular unconscionable term. *See Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004) ("If a contract or term thereof is unconscionable at the time the contract is made, a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term."). But refusing to enforce an unconscionable contract is a far cry from an award for monetary damages. So while this Court should dismiss the adhesion claim with prejudice in its entirety because no such cause of action exists, at a minimum, it should dismiss the claim to the extent it seeks monetary relief. (*See* Compl., Prayer for Relief, § B (seeking damages of up to ten million dollars as an alternative to contract rescission).)

## II.    Cigna's Providers Agreements Allowed It to Suspend Plaintiffs' Contracts.

Even if contract of adhesion were a valid claim (and it is not), Plaintiffs would face another insurmountable obstacle: Plaintiffs' preexisting provider contracts with Cigna—contracts that Plaintiffs do ***not*** allege were adhesive—allowed Cigna and ASH to take the very actions about which Plaintiffs now complain. (*See supra* Factual Background at 4-6.)

In ruling on Cigna's motion to dismiss in *Cole I*, Judge Campbell did not dismiss the adhesion claim primarily because the parties had not "adequately addressed the question of whether Cigna was legally entitled to suspend [its] existing contracts with Plaintiffs, which the Court consider[ed] to be essential to its evaluation of this claim." 2015 WL 1734926, at *6. Plaintiffs' provider contracts were not before the Court at that time. They are before this Court now, however, and can be considered at the Rule 12(b)(6) stage because they are "referred to in

13

the complaint and [are] central to the plaintiff's claim." *Greenberg*, 177 F.3d at 514. As detailed below, those contracts gave Cigna the right to do what Plaintiffs now complain about.

As a threshold matter, Plaintiffs expressly agreed that Cigna could suspend their preexisting provider contracts by signing the ETPs. But even before the ETPs were signed, Cigna's provider agreements with Plaintiffs ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ (Pinkley Decl. Ex. E (Wegener Agreement), at 10, 12; Ex. F (Bradford Cole Agreement), at 4, 5.)[7] ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████[8] So the plain language of the provider contracts fully supported the choice that Cigna gave Plaintiffs: join ASH and continue participating as a Cigna in-network provider through ASH, or decline to join ASH and stop participating as a Cigna in-network provider by terminating the provider agreement. Thus, while Plaintiffs appear to contend that they were entitled to maintain their contracts with Cigna (*see, e.g.*, Compl. ¶ 194), the fact is that the Plaintiffs' preexisting contracts with Cigna specifically allowed Cigna to take the action about which Plaintiffs now complain.

In fact, the preexisting provider contracts between Cigna and Plaintiffs Drs. Wegener, Massey, and Justice ████████████████████████████████████

---

[7] *See also* Ex. G, Massey Agreement at 10, 13 (same); Ex. H, Justice Agreement at 10, 13 (same). Cigna has been unable to locate a copy of Plaintiff Richard Cole's original contract with Cigna, but Plaintiffs have averred that he used the same contract as Dr. Bradford Cole, which Plaintiffs attach as Exhibit A to their complaint. (Compl. ¶ 26.)

[8] *See* Compl., Ex. B (November 1, 2010 letter, informing B. Cole of the arrangement with ASH, and requiring him to accept or reject no later than February 11, 2011); *id.* Ex. C (November 11, 2010 letter to Wegener, with a February 11, 2011 deadline). Plaintiffs have not included as exhibits the letters that other Plaintiffs received, but nothing in the Complaint suggests that any of them received notice less than 90 days before February 11, 2011.

14



(Ex. H, Health Practitioner Managed Care Agreement Between Dr. Cary Justice and Cigna HealthCare of Tennessee, Inc., at 15 § III.Q.[9])

(Ex. F, Bradford Cole Agreement, at 3.)

So, while Plaintiffs contend that Cigna had no right to suspend their provider agreements, the reality is that Cigna did have this right and simply exercised it. Cigna's exercise of its contractual rights cannot be converted into a colorable adhesion claim. Nor can Plaintiffs ask the Court to rewrite their contracts with Cigna and ASH under the guise of adhesion simply because they are now unhappy with the deal they made, because "a party is obligated to be bound by the terms of an agreement he or she signs." *Plyler v. BDO Seidman, L.L.P.*, 2004 WL 5039850, at *7 (W.D. Tenn. Dec. 15, 2004).

---

[9]  The provider agreements for Plaintiffs Wegener, Massey, and Richard Cole contain this same provision. (Ex. E, at 14-15 § III.Q (Wegener); Ex. G, at 15 § III.Q (Massey).)

**III.    Plaintiffs Fail to Allege that the Contract at Issue Was Adhesive.**

Even if adhesion were a real claim (it is not), and even if Cigna had no right to suspend Plaintiffs' contracts (it did), this claim should still be dismissed—because Plaintiffs failed to plead facts to plausibly show that the contract they signed was actually adhesive.

A contract of adhesion is "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996). But "[a] contract is not adhesive merely because it is a standardized form offered on a take-it-or-leave-it basis." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 500 (6th Cir. 2004). Instead, courts also look at several other factors, including whether the party lacked "meaningful choice" in accepting or rejecting the agreement due to a weaker bargaining position. *See, e.g.*, *id*. at 501-02. Importantly, it is not enough to allege that Plaintiffs had to sign the contract to obtain the desired goods or services; they ***also*** must show they would not have been able to obtain those goods or services elsewhere. *See, e.g.*, *id.* at 502-03; *Stout v. Byrider,* 50 F. Supp. 2d 733, 740 (N.D. Ohio 1999) (declining to find adhesion in a contract to buy a used car, as such cars "are widely available from a huge number of sellers if [the buyers] found the arbitration provision unacceptable"); *Doss v. Nordstrom, Inc.*, 2016 WL 5793238, at *5 (M.D. Ten. Sept. 22, 2016) (finding, on a motion to dismiss, that an employment contract with an arbitration provision was not adhesive even though plaintiff argued the contract was a mandatory condition of her employment with Nordstrom, because "a lack of meaningful choice would require a showing that the employee had no other comparable employment options.").

Plaintiffs cannot meet this standard because not only have they failed to plead they had no "meaningful choice" but to accept the new arrangement between Cigna and ASH, Plaintiffs'

own allegations admit the opposite was true: in addition to choosing to stay in network by signing with ASH (as they did), Plaintiffs could have rejected the contract with ASH and operated as an out-of-network provider (as several of their peers ultimately did), they could have chosen to contract with another managed care company, or they could have chosen to exclusively see patients covered under Medicare or Medicaid. These multiple alternatives refute any boilerplate assertions by Plaintiffs that the contract was adhesive. *See Doss*, 2016 WL 5793238, at *5; *Andersons, Inc. v. Horton Farms*, 166 F.3d 308, 324 (6th Cir. 1998) (finding no adhesion or unconscionability where a grain seller who entered the contract failed to show that it had "searched for other alternatives and that there were none"); *Wallace*, 938 S.W.2d at 687-88 (no contract of adhesion where plaintiffs failed to show they "had no realistic choice" in what was a "competitive" market, regardless of the contract being offered on a "take-it-or-leave-it basis"); *Patteson v. McAdams Tax Advisory Group, LLC*, 2010 WL 711161, at *4 (W.D. Tenn. Feb. 14, 2010) (declining to find investment agreement adhesive where plaintiff "has not alleged . . . that he would have been unable to find other investment services had he refused to sign the Agreement.").

## IV. Even if the Agreement Were an Adhesion Contract, Plaintiffs Have Failed to Plead that It Was Unconscionable.

Even if the agreement between Plaintiffs, Cigna, and ASH, were a contract of adhesion (and it is not), it would still be enforceable. Adhesive contracts are not *per se* unlawful; instead, they are unenforceable only if (and then only to the extent) they are also both substantively and procedurally unconscionable. *See, e.g.*, *Cooper*, 367 F.3d at 503 ("Even if the [] arbitration agreement were adhesive, the agreement was enforceable under Tennessee law unless [plaintiff] showed it was also unconscionable"). Plaintiffs have failed to allege either procedural or substantive unconscionability.

17

### A. Plaintiffs Have Not Pled Procedural Unconscionability.

Fundamental to the concept of adhesion is the notion that one party was weaker and thus lacked the capacity to fully understand its terms and possible alternatives to signing the contract. *See, e.g.*, *Ross Prods. Div. Abbott Labs. v. State*, 2007 WL 4322016, at \*4 (Tenn. Ct. App. Dec. 5, 2007) ("Contracts of adhesion often arise from transactions between ***relatively uneducated or powerless members of the public*** on one side, and knowledgeable professionals or powerful companies on the other."); *Cohn Law Firm v. YP S.E. Advertising & Publishing, LLC*, 2015 WL 3883242, at \*7 (Ten. Ct. App. June 24, 2015) ("Where the parties possess equal bargaining power or sophistication, courts are less likely to find an unconscionable bargain.").

In determining whether procedural unconscionability exists, courts take into account factors "bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen," and "whether the terms were explained to the weaker party." *Cooper*, 367 F.3d at 504. But there is nothing in the Complaint to suggest procedural unconscionability under ***any*** of these factors. The lack of any such allegations warrants dismissal. *See Gebhardt*, 2010 WL 2901823, at \*3 (finding no unconscionability at the Rule 12(b)(6) stage where, among other things, plaintiff "has not alleged any exceptional circumstances explaining why she did not understand the contract," such as "that her 'educational background or abilities' prohibited her from understanding the loan agreement."); *Doss*, 2016 WL 5793238, at \*6 (finding no unconscionability in ruling on a motion to dismiss or compel arbitration, where "plaintiff has presented no evidence to suggest that her age, education, or experience rendered her unable to understand the terms of the contract.").

Indeed, Plaintiffs' own allegations compel the ***opposite*** conclusion: there was no procedural unconscionability. Plaintiffs are not hapless, uneducated consumers who were strong-armed into signing a contract. In fact, they are prototypical sophisticated commercial

18

actors, as well-educated, licensed physicians who have been treating patients in Tennessee as part of Cigna's network for years. (*See* Compl. ¶¶ 16-17, 145, 150, 155, 160, 165.) And courts have repeatedly refused to find procedural unconscionability even when the party challenging the contract was much less sophisticated than Plaintiffs. *See, e.g.*, *Advantage Sales and Leasing Co. v. Townsend*, 1987 WL 16123, at *3 (Tenn. Ct. App. Aug. 28, 1987) (no unconscionability where husband and wife plaintiffs who signed car lease contract had some college education and had previously leased a car); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 705 F.3d 967, 977 (6th Cir. 2007) (concluding that plaintiff's "education and a position as a branch office manager" made it unlikely that she could show unconscionability).

### B.  Plaintiffs Have Not Pled Substantive Unconscionability.

A contract is only unconscionable when the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Seawright*, 507 F.3d at 977.

Here, Plaintiffs take issue with some of the business changes that occurred as a result of Plaintiffs joining ASH—for instance, that some claims were allegedly not processed correctly, or that Plaintiffs were allegedly penalized for submitting paper instead of electronic claims. But these disagreements with ASH and Cigna's ***business practices*** are a far cry from well-pled allegations detailing why the ***contractual terms*** of the new agreement are so "shock[ing]" and "oppressive" as to be unenforceable. *See id.* The lack of such allegations is fatal to Plaintiffs' adhesion claim. *See Gebhardt*, 2010 WL 2901823, at *4 (dismissing where plaintiff "has not explained why the loan agreement was unconscionable" and "has not identified what provision was 'grossly unfair' or 'offensive to the public conscience'").

19

Indeed, there is nothing the least bit surprising that a large insurer like Cigna would contract with a third-party like ASH to "perform utilization management on claims, network contract administration, network management, and claims processing and payment" in a specialized area like chiropractic care. (*See* Compl. ¶ 41.) And the fact that Cigna's relationship with ASH may have led to some changes in Plaintiffs' practices is simply not the type of conduct that would "shock the judgment of a person of common sense." *See Buraczynski*, 919 S.W.2d at 320. Thus, even if the agreements here were adhesive—and they are not—none of Plaintiffs' allegations plausibly suggest there was anything unconscionable about them.

## CONCLUSION

For reasons set forth above, Cigna respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety with prejudice.

DATED: March 24, 2017

Respectfully submitted,

*/s/ T. Harold Pinkley*

T. Harold Pinkley, BPR 09830
Amanda Haynes Young, BPR 015472
Valerie Diden Moore, BPR 031593
BUTLER SNOW LLP
150 Third Avenue South, Suite 1600
Nashville, TN 37201
harold.pinkley@butlersnow.com
mandy.young@butlersnow.com
valerie.moore@butlersnow.com
Telephone: (615) 651-6700
Facsimile: (615) 651-6701

Joshua B. Simon
Warren Haskel
   (both admitted *pro hac vice*)
Dmitriy Tishyevich
   (*pro hac vice* application pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
joshua.simon@kirkland.com
warren.haskel@kirkland.com
dmitriy.tishyevich@kirkland.com
Telephone: (212) 446-4800
Facsimile: (212) 446-6460

*Counsel for Defendant Cigna Corporation*

20

## CERTIFICATE OF SERVICE

I, T. Harold Pinkley, certify under penalty of perjury that on this 24th day of March 2017

I caused a true and correct copy of the Memorandum in Support of Cigna Corporation's Motion

to Dismiss to be served upon all counsel of record via this Court's electronic filing system.


*/s/ T. Harold Pinkley*
T. Harold Pinkley