UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICHARD COLE, BRADFORD COLE, CARY JUSTICE, MICHAEL MASSEY and DON WEGENER, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN SPECIALTY HEALTH NETWORK, INC., AMERICAN SPECIALTY HEALTH, INC., CIGNA CORPORATION, INC., JOHN DOES A, B, & C, and JANE DOES A, B, & C, <br><br> Defendants. | Case No. 3:17-cv-00013 <br><br> Judge Waverly D. Crenshaw <br> Magistrate Jeffery S. Frensley |

## DEFENDANTS AMERICAN SPECIALTY HEALTH NETWORK, INC. & AMERICAN SPECIALTY HEALTH, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants American Specialty Health Network, Inc. and American Specialty Health, Inc. (collectively, "ASH") file this Memorandum of Law in Support of Their Motion To Dismiss the Complaint.

In support of this Motion, ASH joins in, incorporates by reference, and adopts as its own the Memorandum of Law in Support of Cigna's Motion to Dismiss, filed by Defendant Cigna Corporation ("Cigna"). (Dkt. Nos. 24 & 25 "Cigna Motion to Dismiss") Cigna's Motion to Dismiss independently justifies dismissal of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted and, specifically, for failure to allege a cause of action recognized at law.

In addition to the grounds set forth in Cigna's Motion to Dismiss, ASH makes the following arguments that support dismissal of Plaintiffs' Complaint under Rule 12(b)(6): (1) the Cigna Election to Participate that Plaintiffs claim bound them to the terms of the ASH Provider Services Agreement created no obligations between Plaintiffs and ASH and, as such, could not

1

have bound Plaintiffs to the Provider Services Agreement; and (2) as made clear by the accompanying Declaration of John M. Donoghue, as well as Plaintiffs' prior filings from their previous attempt to assert this claim, Plaintiffs had the full Provider Services Agreement when they signed the Election to Participate, and thus knew what those terms were at that time. These arguments were not included in the briefing that was before the court in *Richard Cole, et al. v. American Specialty Health Network, Inc.* (Case No. 3:14-cv-02022) (hereafter, "*Cole* I"), and thus were unaddressed by that court's ruling.

### A. Summary Of Argument And Case History.

The crux of Plaintiffs' contract of adhesion claim is the assertion that they were forced to sign a three-page contract–Cigna's "Election to Participate" form– to which ASH was not a party ("Cigna ETP"). Plaintiffs claim the Cigna ETP somehow bound them to an "adhesive" contract with ASH–the 82-page ASH Provider Services Agreement ("PSA"). Plaintiffs allege that they did not receive a copy of the PSA until after being bound to its terms by the act of signing the Cigna ETP. (Compl., ¶¶ 38, 40-46.) Specifically, Plaintiffs allege that each of the named plaintiffs "entered into the required ASH three page agreement" on either "April 1, 2011" (plaintiffs Richard Cole, Bradford Cole, Cary Justice, and Don Wegener) or "May 1, 2011" (plaintiff Michael Massey), and that only "[a]fter signing the short agreement, [plaintiff] received in the mail a CD containing an 82-page contractual agreement with ASH's terms and conditions." (*Id.*, ¶¶ 146-147 [Richard Cole], 151-152 [Bradford Cole], 156-157 [Cary Justice], 161-162 [Michael Massey], 166-167 [Don Wegener].) As set out below, these allegations fail to demonstrate that the ASH contract is a contract of adhesion, as a matter of law and as a result of Plaintiffs' binding admissions.

2

### B. The Cigna ETP Form Could Not Give Rise To A Contract Of Adhesion, Because The Cigna ETP Did Not Bind The Plaintiffs To The Terms Of The PSA.

The terms of the Cigna ETP make clear that it does not bind Plaintiffs to anything with respect to ASH.[1] Yet, Plaintiffs boldly allege that, when they signed the Cigna ETP, they became contractually bound by the terms of ASH's PSA. (Compl., ¶¶ 40-45.) Specifically, they allege it was this "requirement" to "sign an election to participate with CIGNA" (*i.e.*, the "three page agreement") that bound the Plaintiffs to the allegedly adhesive terms of the PSA. (*Id.,* ¶¶ 146, 151, 156, 161, 166.) The essential premise of this argument is wrong as a matter of law. While the Cigna ETP may have created obligations vis-à-vis Plaintiffs *and Cigna* (as discussed in Cigna's Motion to Dismiss), it created no such obligations vis-à-vis ASH since ASH was not a party to the Cigna ETP. It therefore cannot be the basis of a contract of adhesion with ASH.

By itself, the Cigna ETP formed no contract between the Plaintiffs and ASH, because the creation of any legal obligation vis-à-vis the providers and ASH is entirely dependent on the providers and ASH signing a separate, independent contract. (Compl., Exh. D at p. 3 of 3.) For that reason, every reference in the Cigna ETP to the relationship between ASH and the providers (including Plaintiffs) is phrased conditionally. For instance, the Cigna ETP explains to providers that their Cigna contract would be suspended if and when the providers contracted with ASH, which occurs only after both the providers and ASH sign the PSA. Specifically, as Plaintiffs themselves acknowledge, no suspension would apply until the "**date on which he or she is or becomes a party to such an arrangement with [ASH]**." (*Id.* (emphasis added), *see also* Compl., ¶ 38; Exh. D at p. 3 of 3.[2]) And the November 2010 letters accompanying the Cigna

---

[1] Plaintiffs attach the Cigna ETP form executed by Plaintiff Bradford Cole, signed on January 20, 2011, as Exhibit D to their Complaint. However, Plaintiffs concede that each of the named Plaintiffs received and executed the same Cigna ETP form. (Compl., ¶ 45.)

[2] Plaintiffs allege that Cigna had no right under its existing contracts with the Plaintiffs to "suspend" those agreements (Compl., ¶¶ 35, 38), but this contention is both false and irrelevant, as explained in Cigna's accompanying Motion to Dismiss. Further, as discussed above, the suspension in the Cigna ETP is irrelevant because that suspension only became effective upon completion of the credentialing process with ASH, which then resulted in a fully executed PSA. Further, as Exhibit A to the Complaint (Plaintiff Cole's Cigna agreement) shows, the Cigna

3

ETP (the "Recruitment Letters") plainly set out that "contract[ing] directly with [ASH]" required "completing and submitting a credentialing application, **Provider Services Agreement,** and CIGNA Election to Participate documents." (Compl., Exh. C at p. 1 of 2 (emphasis added).) In other words, the suspension referenced in the Cigna ETP only applied *when and if the Plaintiffs had contracted with ASH*. By the Cigna ETP's own terms, then, no obligation took effect until the providers had completed their application process and ASH countersigned the PSA.

As you would expect from a document where Plaintiffs are "electing" to participate, other terms in the Cigna ETP are similarly contingent. For example, the Cigna ETP opens with precatory language summarizing a potential future relationship—not a current and existing one—between ASH and its providers: "You acknowledge that you also *wish to become* a 'Represented Provider' of ASH . . . ." (Compl., Exh. D at p. 2 of 3 (emphasis added).) Of course, as discussed above, any individual provider's desire—including those of Plaintiffs—to become a Represented Provider was contingent on the execution of the PSA by both parties and the successful conclusion of ASH's credentialing process. Similarly, the Cigna ETP's provisions concerning ASH's assumption of collection and payment responsibilities are made applicable only "[t]o the extent" the providers (*i.e.,* Plaintiffs) become participants with ASH. (*Id.*, at p. 2 of 3, ¶ 2.) Again, that entails successful completion of the ASH credentialing process.

While signing the Cigna ETP may have impacted the providers' relationship with Cigna, it did not create a relationship between them and ASH. In fact, Exhibits C and D to Plaintiffs' Complaint confirm that there was not and could not have been any contract between Plaintiffs and ASH—let alone one that could possibly be adhesive— until the Plaintiffs completed the ASH contracting process. That process included receipt and execution of the 82-page PSA. By its own terms, the Cigna ETP contemplates that a relationship between ASH and the individual providers (including Plaintiffs) might exist in the future, depending on the outcome of the

---

agreements contain a termination provision whereby either party could terminate with 60-day notice for any reason. (Compl., Exh. A at p. 4 of 8.) As explained more fully in Cigna's Motion to Dismiss, Cigna had every right to terminate the agreement if it chose to do so.

4

credentialing process. That necessarily means that no *current* contractual obligations to ASH, adhesive or otherwise, were created when the Cigna ETP was signed. Plaintiffs' theory of an alleged contract of adhesion is thus a legal impossibility.

### C. **Plaintiffs' Filings Conclusively Demonstrate That The Factual Basis Of Plaintiffs' Contract Of Adhesion Claim Is Untrue.**

Notwithstanding the fact that the Cigna ETP did not create a relationship between the providers and ASH, Plaintiffs predicate their contract of adhesion claim on the allegation that Plaintiffs signed the Cigna ETP before having the opportunity to read the ASH PSA. (Compl., ¶¶ 44-45, 190-198.) The documents attached to Plaintiffs' Complaint, and documents Plaintiffs otherwise have relied upon, demonstrate that this statement is incorrect.

The starting point of the necessary analysis is the accepted principle that, "[w]hile . . . in considering a motion to dismiss, all well-pleaded factual allegations must be taken as true, a court 'need not indulge in unreasonable inferences.'" *Girgis v. Countrywide Home Loans, Inc.,* 733 F.Supp.2d 835, 843 (N.D. Ohio 2010) (quoting *HMS Prop. Mgmt. Grp. Inc. v. Miller,* 69 F.3d 537 (6th Cir. 1995)). Furthermore, "a court may disregard allegations contradicted by facts established by exhibits and attached to the pleading." *Id.* Guided by these principles, it is clear that the core premise of Plaintiffs' claim—that they were forced to sign the Cigna ETP prior to knowing the terms of the PSA—fails, and that the Complaint must be dismissed.

The Complaint and its exhibits, along with Plaintiffs' prior public court filings, provide the minimal background needed to confirm this inescapable conclusion. On November 11, 2010, ASH provided Plaintiffs with the Recruitment Letters (a representative copy of which is attached as Exhibit C to the Complaint), informing them that they must enroll by a "certain deadline" to remain in-network with Cigna, and that ASH sent them an "enrollment package." (Compl., ¶¶ 34, 36, 43.) Plaintiffs concede that ASH sent the same Recruitment Letter to each of the five named Plaintiffs in November 2010. (*Id.,* ¶ 34.) The Recruitment Letter, by its own terms, expressly included a "Contracting Kit compact disc." (Compl., Exh. C at p. 2 of 2 ("The enclosed ASH Networks Contracting Kit compact disc provides detailed information on the

5

completion of the documents that need to be returned to ASH Networks to begin your credentialing process . . .").)

The plain import of the Recruitment Letter's description of its enclosures is confirmed when one looks beyond what Plaintiffs chose to provide the Court (*i.e.*, just the four corners of the cover letter itself), and also considers the Letter's attachments. This simple exercise confirms two critical and dispositive facts. First, as the text of the Recruitment Letter itself provides, each Recruitment Letter contained an enclosed Contracting Kit compact disc. (*Id.*; Declaration of John M. Donoghue ("Donoghue Decl."), ¶¶ 3-4.) Second, the Contracting Kit compact disc contained a copy of the PSA. (Donoghue Decl., ¶ 4 & Exh. 1.) As such, Plaintiffs' claim that, by signing the ETP, they were somehow forced to agree to unknown terms of the PSA, is pure fiction. A cursory review of the Contracting Kit compact disc would have revealed that Plaintiffs had the PSA all along, and thus had knowledge of its terms when signing the Cigna ETP. (*Id.*)

But the Court need not take ASH's word for this; Plaintiffs themselves rely upon documents that establish that the Recruitment Letters contained copies of the PSA. In *Cole I*, Plaintiffs filed documents in opposition to ASH's Motion to Dismiss that relied on and attached an ASH/Cigna submission to the Tennessee Commissioner of Insurance that unequivocally establishes that the Contracting Kit compact disc included with the November 2010 Recruitment Letters contained a copy of the PSA—and that Plaintiffs and their current counsel knew as much.[3] Specifically, Exhibit A to the *Cole I* Opposition included excerpts of a 2012 letter

---

[3] Plaintiffs' own Exhibit A to their Opposition in *Cole I* is attached hereto as **Exhibit A**. The Court can take notice of and consider Plaintiffs' prior filings as a record of this case, because the Plaintiffs themselves placed the exhibit in the court record to clarify their prior allegations against Defendants. *See New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (Rule 12(b)(6) motion granted based on judicial notice of plaintiff's pleadings in related proceeding); *Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*, 129 F.Supp.2d 578, 580–81 (W.D.N.Y. 2000) (court relied on documents filed by plaintiff and defendants with various agencies when ruling on motion to dismiss, even when not attached to plaintiff's complaint, because "plaintiff had notice of the documents" and "relied" upon them "in bringing this action.").

6

submitted to the Tennessee Commissioner of Insurance, on which Plaintiff Richard Cole and Amber Griffin Shaw, his counsel before the Commissioner and in this matter, were copied. This submission to the Insurance Commissioner describes the ASH November 2010 Recruitment Letters, stating that the letters included a CD containing the "full Practitioner Services Agreement" and that "these materials [, the PSA,] **were sent to Tennessee practitioners on November 12, 2010**." (Exh. A at pp. 2 and 6 of 8 (emphasis added).)[4] To be clear, plaintiffs themselves submitted this letter and relied on it in *Cole I* to explain the factual allegations of their Complaint. "[T]he plaintiffs, having themselves attached this material" as evidence to their prior filing "are bound by them," and cannot now dispute the evidence of which they have sought to take advantage. *Chester Cty. Intermediate Unit v. Penn. Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990); *see also Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) ("Pleadings in a prior case may be used as evidentiary admissions.") (quoting *Williams v. Union Carbide Corp.,* 790 F.2d 552, 556 (6th Cir. 1986)).[5]

This evidence belies Plaintiffs' contract of adhesion claim because it underscores that Plaintiffs received the PSA long before they signed the Cigna ETP in April or May 2011—and

---

[4] The Tennessee Insurance Commissioner submission also notes that ASH sent Dr. Richard Cole a letter on February 28, 2011 which "contained **another copy of the Practitioner Service Agreement [PSA]** that had previously been made available." (Exh. A at p. 4 of 8 (emphasis added).) This is further indication that Plaintiffs were in possession of the PSA long before signing any agreement, which they allege occurred in April or May of 2011. (Compl., ¶¶ 146-147, 151-152, 156-157, 161-162, 166-167.)

[5] Judge Campbell found in *Cole I* that there was uncertainty as to whether the Contracting Kit CD included the PSA, although he observed that the Recruitment Letter "does imply that is the case." (*Cole* I, Memorandum Op. (Dkt. No. 43) at pp. 9-10.) Indeed, the Recruitment Letter explains, *inter alia*, that a fully executed PSA was necessary to complete the contracting process: the Contracting Kit compact disc "provides detailed information on the completion of the documents that need to be returned to ASH"; and those documents (*i.e.*, those that must be submitted to begin the credentialing process) are specifically enumerated in the Recruitment Letter to include the PSA, among others. (Compl., Exh. C at p. 2 of 2.) However, when ASH filed its motion to dismiss in *Cole I*, ASH was not able to rely upon the contents of the filing with the Tennessee Commissioner of Insurance, as Plaintiffs did not use that document until they filed their opposition to ASH's Motion to Dismiss. As such, Judge Campbell did not have a full opportunity to consider its significant import.

7

thus could not have been forced, as they allege, to sign the Cigna ETP before the full terms of the PSA had been provided. Thus, Plaintiffs' own exhibits show that their claim that they did not have all of the necessary information prior to executing the Cigna ETP is demonstrably false and must be rejected.

### D. Plaintiffs Have Not Adequately Pled A Contract Of Adhesion.

Independent of whether the Cigna ETP could be the basis of a contract of adhesion (it cannot), and whether Plaintiffs received the PSA concurrently with the Cigna ETP (they did), the Complaint must be dismissed because Plaintiffs cannot, as a matter of law, plead a contract of adhesion. This is addressed in more detail in Cigna's accompanying brief, which ASH joins. In short, Plaintiffs had the opportunity to accept or deny the PSA's terms, regardless of having signed the Cigna ETP. Indeed, Plaintiffs' Complaint admits that some of them "opted out" of the ASH contract. (Compl., ¶ 109); *see also Morrison v. Circuit City Stores, Inc.*, 70 F.Supp.2d 815, 822 (S.D. Ohio 1999), *aff'd*, 317 F.3d 646 (6th Cir. 2003) ("adhesion contracts do not exist where [plaintiffs] have a choice"). Furthermore, even after Plaintiffs had signed the PSA, they were free to terminate it the day after they signed it or at any time, without penalty, if they so chose. *See* Donoghue Decl., Exh. 1, art. 5.01.

\*       \*       \*

Accordingly, for the reasons set forth above, and for the reasons set out in Cigna's Motion to Dismiss and Memorandum of Law, ASH respectfully requests that Plaintiffs' Complaint be dismissed with prejudice.

8

Respectfully submitted,

*/s/ Britt K. Latham*
Britt K. Latham (#23149)
Meredith M. Thompson (#25536)
**BASS BERRY & SIMS PLC**
150 Third Ave. South, Suite 2800
Nashville, Tennessee 37201-3001
Telephone: (615) 742-6200
Facsimile: (615) 742-0442
blatham@bassberry.com
mthompson@bassberry.com


Elizabeth D. Mann (CA #106524)
Matthew H. Marmolejo (CA#242964)
MAYER BROWN, LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248
emann@mayerbrown.com
mmarmolejo@mayerbrown.com

*Attorneys for Defendants American Specialty Health Network, Inc. and American Specialty Health, Inc.*

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been served upon opposing counsel, via the Court's CM/ECF e-mail notification on March 24, 2017:

**J. Houston Gordon**
**Lyle Reid**
**Amber Griffin Shaw**
LAW OFFICES OF J. HOUSTON GORDON
Hotel Lindo Building, Suite 300
114 West Liberty Avenue
Covington, TN 38019
Phone: (901) 476-7100
Fax: (901) 476-3537
ashaw@lawjhg.com
lawjhg@comcast.net

*Attorneys for Plaintiffs*

**Joshua B. Simon**
**Warren Haskell**
**Dmitriy Tishyevich**
KIRKLAND & ELLIS
601 Lexington Avenue
New York, NY 10022-4611
Phone: (212) 446-4789
Fax: (212) 446-6460
jsimon@kirkland.com
whaskel@kirkland.com

**T. Harold Pinkley**
**Valerie Diden Moore**
**Amanda H. Young**
BUTLER SNOW LLP
150 Third Avenue South, Suite 1600
Nashville, TN 37201
Phone: (615) 651-6700
Facsimile:(615) 651-6701
harold.pinkley@butlersnow.com
valerie.moore@butlersnow.com
amanda.young@butlersnow.com

*Attorneys for Defendant CIGNA*

/s/ Britt K. Latham